Filed November 28, 1892.

---

No. 16,723.

Florer, Treasurer, v. State, ex rel. Arnold, Trustee.

Assignment of Error.—*Joint Assignment.*—*When no Question is Presented.* —When an assignment of error is that "the court below erred in refusing to quash the service of the writ of mandate and the return of the sheriff thereof," if either the writ or service is valid the assignment of error will present no question ; as the assignment is joint in its application, the acts referred to must be jointly bad or the assignment of error will fail.

Taxes.—*Superseding and Repealing Act.*—*Dog Tax.*—*Act of March 5, 1891.*— The act of March 5, 1891 (Acts 1891, p. 453), relating to the taxation of dogs, and the disposition of the funds to be derived from such taxation, was general in its provisions, and intended to supersede all previous laws pertaining to said subject of taxation.

Same.—*Dog Tax.*—*Act of March 7, 1883, and April 8, 1885, Repealed.*— *Not Revived by Act of March 6, 1891.*—When the act of March 6, 1891, relating to the taxation of dogs, was passed, the laws relating to the same subject, approved March 7, 1883, and April 8, 1885, were not in force, as they were in conflict with the act approved March 5, 1891, and were repealed by it, and could not be revived by the manner in which they were referred to in section 47 of the act of March 6, 1891, relating to taxation.

Same.—*Dog Tax.*—*Township Trustee Entitled to.*—*County Treasurers Should Pay Over.*—The act of March 6, 1891 (Acts 1891, p. 286, section 236), makes the township trustee the custodian of the dog fund for the pur-

pose mentioned in the statute, and when properly applied for, the county treasurer is required to pay over such fund.

From the Tippecanoe Superior Court.

*A. L. Kumler* and *T. F. Gaylord*, for appellant.

*A. A. Rice* and *W. S. Potter*, for appellee.

OLDS, J.—This action was brought by the appellees' relator as trustee of Washington township, in Tippecanoe county, against the appellant as treasurer of said Tippecanoe county, to compel the payment, by mandate, of a warrant issued by the auditor of said county, in favor of said relator as trustee aforesaid, for the sum of $3,619.49. The appellant refused to pay the warrant, unless the appellees' relator would receipt for and allow to be deducted from the amount of the warrant $111 surplus dog tax, and accept $111 less than the face of the order, in full payment of the same. Thereupon the relator brought this suit to compel the payment of the order by mandate. An alternative writ of mandate first issued, and, as shown by the record, was served by the sheriff by delivering a certified copy of the writ to the appellant. The appellant, by counsel, first entered a special appearance and moved to quash the alternative writ of mandate, and the return of the sheriff thereon. This motion was overruled and exceptions reserved, and the ruling preserved by a bill of exceptions. The appellant then made a return to the writ in the form of an answer in two paragraphs, to each paragraph of which a demurrer was addressed by the appellee, and sustained by the court, and exceptions were reserved. The appellant refusing to plead further, the court rendered judgment in favor of the appellee, and ordered a peremptory mandate compelling the payment of the order.

Errors are assigned on the rulings of the court, in overruling appellant's motion to quash the alternative writ of mandate and the sheriff's return thereon, and in the sustaining of the demurrer to the paragraphs of answer.

Counsel for appellant assume that the question is presented as to whether or not the court erred in refusing to quash the service of the alternative writ of mandate, or by refusing to set aside the service. And counsel for appellee filed their brief in advance of the filing of the appellant's brief, and made no allusion to this question.

It is quite apparent that no harm was done by the manner in which the service was made, even if it was erroneous, though we do not wish to be understood as indicating any opinion as to its validity, as we do not deem the question presented by the record.

The motion in this case was "to quash the alternative writ of mandate issued in this behalf, and the return of the sheriff thereon," and it was this motion as a whole that was overruled, and the ruling excepted to. This motion was a verbal motion, and asked the court to quash both the writ and the service.

The assignment of error is that "the court below erred in refusing to quash the service of the writ of mandate, and the return of the sheriff thereof." The court was not asked to quash the service of the writ, but was asked to quash both the writ and the service. To have overruled a motion to quash or set aside the service might have been error, while to have overruled a motion to quash the writ would not. If the writ was valid, it was not error to have overruled a motion to quash both the writ and the service. No question is presented by this assignment of error.

The ruling on the demurrer to the answer presents the question as to who is entitled to the control of the dog tax fund. The auditor included the amount of $111, the dog fund due the township in the warrant to the relator, the township trustee, and it is now contended that the trustee is not entitled to it, and the appellant refuses to pay the amount included in the warrant as dog tax, but is willing to pay the balance of the order, less that amount. The settlement of this question depends upon the construction

to be given to the statutes. There seems to be some confusion in the various sections of the statute. Section 6 of an act approved March 7, 1883 (section 449, Elliott's Supp.), provides that the money derived from the taxation of dogs shall constitute a fund to be used for the payment of damages sustained by the owners of sheep maimed or killed by dogs within any township, and that such fund shall be paid by the county auditor to the township trustee of the township in whose township the dogs were listed, and the trustee shall hold the same for the purpose aforesaid.

Section 1 of an act approved April 8, 1885 (Elliott's Supp., section 454), amends section 8 of the act of 1883, and provides that, when it shall occur on the first Monday of March of any year that the fund shall accumulate to an amount exceeding $50 above the amount of the orders drawn against it, the surplus shall be paid and transferred to the county treasurer, and such surplus shall constitute a county dog fund, and be distributed among the townships of the county in which the orders drawn against the fund exceed the money on hand. And any surplus in the county dog fund remaining on the second Monday in March shall be transferred to the school fund, and distributed as interest on the congressional school fund is distributed. By an act approved March 5, 1891, Acts of 1891, p. 453, further provisions are made relating to the taxation of dogs and the disposition of the funds derived therefrom. Section 1 provides for the registration of dogs by the township trustee, and the payment to him of a fee, the amount of which is fixed by the section.

Sections 2, 3 and 4 subject unregistered dogs to be lawfully killed, afford proctection to registered dogs, and make it a misdemeanor to keep or harbor a dog not registered; and section 6 of the act provides that the money derived from the registration and from fines under the act shall constitute a dog fund for the payment of damages sustained by

Florer, Treasurer, *v.* State, *ex rel.* Arnold, Trustee.

the owner of swine, cattle, horses, and sheep killed, maimed, or damaged by dogs within such township, and provides that the trustee shall collect the fines assessed by the courts under the act. Section 7 provides the manner of reporting and making proof of the loss sustained by the owners of such animals. Section 8 of the act provides that dogs registered as provided for in the act shall not be assessed for taxation for any purpose whatever. Section 9 repeals all laws and parts of laws in conflict with the provisions of the act, and section 10 contains an emergency clause.

It is evident that this act was intended to supersede all previous laws relating to the taxation of dogs. It was certainly intended to be broad enough in its provisions to require the registration of all dogs, and it changes the disposition of the funds to be derived from the taxation of dogs and applies it to the payment of damages sustained by owners of swine, cattle, horses, and sheep, instead of sheep alone.

On the day following, March 6, 1891, another act was passed, entitled "An act concerning taxation, repealing all laws in conflict therewith, and declaring an emergency."

By section 47 of the latter act, Acts of 1891, p. 210, it is provided that " the assessor shall list every dog over the age of six months within his township to the persons owning, keeping or harboring the same, and such person shall be charged on the duplicate one dollar if a male, and two dollars if a female dog, and the further sum of two dollars for each additional dog, beyond one; which amounts so charged shall be carried to the column of total amounts, and collected as other taxes are collected: *Provided,* That nothing in this act shall be so construed as to repeal or modify any of the provisions of an act to provide for the taxation of dogs, etc., in force March 7, 1883, and an act to amend section 8 of said act of March 7, 1883, approved April 8, 1885, both of which acts shall remain in full force and effect."

Section 236 of the same act, Acts of 1891, page 286, provides that " the revenue received from the tax on dogs in each township shall be set apart by the county auditor at such annual settlement, and the same shall be paid over by the county treasurer to the proper township trustee. The sums so collected and received in each township are hereby declared to be a fund for the payment of damages sustained by the owners of sheep maimed or killed by dogs within such township ; and each township trustee is directed and required to hold the same for such purposes : *Provided,* however, that when it shall so happen on the first Monday of March in each year, in any township, that the said fund shall accumulate to an amount exceeding $50 over and above orders drawn against the same, then the surplus over said sum of $50 shall be expended by such trustee for the use of the school revenue of the township."

By section 259 of the same act, "All laws and parts of laws within the purview of this act, including 'An act to render uniform the assessments of personal property in the several townships of the different counties, approved March 8, 1889, are hereby repealed.' "

At the time this latter act, approved March 6, 1891, was passed, the laws approved March 7, 1883, and April 8, 1885, were not in force, for they were in conflict with the act approved March 5, 1891, and were repealed by it; and certainly they could not be revived and re-enacted by the mere reference to them, in the manner they are referred to in section 47 of the act of March 6, 1891. It is quite apparent that the Legislature was laboring under the mistaken idea that the two acts were in force, and they were to be allowed to remain in force so far as they did not interfere with the provisions of that section. Indeed, there is no language used that would indicate an intention to re-enact them, even if it could be done in such an informal way. But, in so far. as the custody and control of the funds are concerned, section 259 of the Act of March 6,

1891, repeals the former acts, in so far as they make the auditor, or any other person, the custodian of the funds, for such former acts, in this regard, would be within the purview of, and in conflict with, section 236 of the last act providing that the fund shall be paid over to the township trustees, and that the surplus shall be expended for the use of the school revenue.

It is clear, we think, that section 236 of the last act is in force, and by virtue of this section the township trustee is entitled to the dog fund, and, therefore, the appellee's relator was entitled to the payment of the order issued to him in full, without any deduction on account of the amount included in it on account of the dog fund. It is possible that the provisions of an act prior to the act of March 6, 1891, in so far as they relate to the mode of proof of damages for sheep killed, and the payment of the same, may be in force, as they are not in conflict with the latter act, but this question is not before us.

It is contended that the first paragraph of answer is good, by reason of the fact that it is a general plea of set-off alleging an indebtedness of $111.28 by the trustee to the county, but we do not think it is. An indebtedness could only arise on account of an application or use of public funds, and to make a good answer the facts must be pleaded showing a right to withhold the payment of the warrant.

There is no error in the record.

Judgment affirmed.

Filed December 15, 1892.